[No. B064450. Second Dist., Div. Seven. Apr. 13, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
KY HUYNH PHAN et al., Defendants and Appellants.

1456

**COUNSEL**

Conrad Petermann and Robert F. Howell, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Peggy S. Ruffra and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS, (Fred), J.**—At night, four men entered a family residence and during a one- to one-and-one-half-hour period robbed four and assaulted two family members. Appellants were two of the four men. A jury convicted them of all charges.

The sole contention of appellant Phan is the trial court erred in admitting the trial identification and pretrial photo identification by a robbery victim. Appellant Nguyen contends there is insufficient evidence he aided and abetted certain crimes, the trial court erred in failing to sua sponte give a unanimity instruction concerning certain counts, and the court impermissibly imposed double punishment. (Pen. Code,[1] § 654.) We find the contentions without merit and affirm the judgments.

### FACTUAL AND PROCEDURAL BACKGROUND

We summarize the evidence with a perspective favoring the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

On March 17, 1991, Saint Patrick's Day, Duc Tran, his wife, Kimqui Do, and their several children all lived at 2761 Delta Avenue in Long Beach. In the early evening only 19-year-old Patricia Tran, her 18-year-old sister Minh Tran, and their 3-year-old nephew were at home. All the doors were locked.

About 7:30 p.m. appellants, Ky Huynh Phan and his former brother-in-law Tra Van Nguyen, and two other men[2] entered the Tran house. A screen, by an open bathroom window, was removed, allowing entry. Then a sliding glass door in the kitchen was opened.

Appellant Nguyen "charged" into the sisters' bedroom with a gun. He was followed by appellant Phan and the other two men, all pointing guns. The men ordered Patricia and Minh to put their heads down and not look at them (but periodically they did look). The men demanded to know where their mother had hidden money. They removed a diamond ring and necklace from Minh. Appellant Nguyen took Patricia's necklace and ordered Patricia to remove her rings. When she couldn't get one of them off he brought her soap and water. When she still could not remove it he got a nail clipper, held her hand, and after about 10 minutes removed it.

---

[1] Statutory references, unless otherwise noted, are to the Penal Code.
[2] There is no indication the other two men were identified, arrested, or prosecuted. They are not parties to this appeal.

The sisters could hear things "being moved and slammed all across the [house], [their] parents' room, [ ] sister's room, the living room. [The men] were running in and out and looking for things. And the guys were communicating with each other too. [¶] . . . They would say 'Watch out for the door. See if somebody [is] coming. Check—you go check that room.' Things like that." The men communicated in both English and Vietnamese.

The men asked the sisters when their parents would return, how many were in the family, where the money was hidden, and other questions. The men said they would wait until the parents came home.

After about 10 or 15 minutes the sisters observed that some of the men had covered their faces with T-shirts or towels or panty hose.

About 8:05 p.m., Mr. Tran, his wife (Kimqui Do), their daughter Nhu Tran (15 years old), and their sons Nhut Tran (13 years old) and Thanh Tran (8 years old) returned home from a banquet. At their front door they were grabbed by the four armed men. The three children were forced to lie face-down on the living room floor. Mr. Tran was grabbed, put on the floor, and tied up. The men demanded money. Mr. Tran was kicked, stepped on, and beaten with a gun. His wallet with a few dollars was taken.

A necklace was taken from Nhu Tran.

Appellant Phan confronted Kimqui Do and ordered her to lie down but she did not. She stood next to him, "looked at his face straight up." He put a gun to her head and said "Lay down. Where's the money?" She removed a wallet from under her blouse and gave it to him. It contained $800 in rent money.

Appellant Phan grabbed her hair, pointed his gun at her and demanded more money. In Vietnamese he said, "Where are the money? Give it to me. If not, I will cut your children's arm or hands." Appellant Nguyen went to the kitchen and returned with a butcher knife. He put it by the hand of eight-year-old Thanh. Appellant Phan said "if she doesn't give the money, just cut off her child." Kimqui Do begged him not to cut off her child's hand and said "Whatever is in the house you can take it but I don't have any more money."

Appellant Phan grabbed Kimqui Do by her hair, dragged her from room to room, banged her head against the wall and said, "Give me the money, you got to give me the money." Another of the men, angry at Kimqui Do for not giving them more money, took items from a display shelf and threw them at her. A third man who had been "threatening or controlling" Mr. Tran, left

Mr. Tran and "came over to kick [her] saying that 'if you don't give me the money, I'm going to hit you.' "

Kimqui Do gave appellant Phan her necklace. Later she saw one of the men leave the house with a bag full of property.

About 9 p.m. another of the Tran children, Paul Tran, returned home, approached the front door and became suspicious when he saw the screen door ajar. He opened the front door and saw a stranger who said "come back." As Paul "took off" he heard the stranger say in Vietnamese "We got discovered." Paul drove to the nearest store and called 911.

About the time of Paul's return, Minh Tran managed to escape through her bedroom closet, which had an outside passage way. She called the police from a neighbor's house.

Patricia Tran heard the men leaving and saw one of them holding her nephew. She sprayed him with perfume and he fled. She called 911.

All four men fled before the police arrived.

Kimqui Do remembered that four days earlier she had seen appellant Phan. She had been in her garage which adjoins a back alley when, about 9 a.m., she heard a car and then heard her garage door being moved. She peeked out and saw a black sports car with four people. Appellant Phan got out of the car. She yelled at them and they drove off.

Minh Tran also recognized one of the robbers, appellant Nguyen. About three months earlier, on the opening day of her uncle's video store, she had worked there and so had appellant Nguyen. This information, after some delay, was given to the police who then ascertained appellant Nguyen's identity and address.

On March 22, 1991, the police arrested appellant Nguyen at his residence. His sister (who had been married to appellant Phan's brother) told them that her brother "hung around" with appellant Phan. That same day the police went to appellant Phan's residence but he was not there. They obtained five photographs depicting appellant Phan and others in various social settings. The photographs were shown to the victims and Kimqui Do identified appellant Phan from one of them. The police issued a bulletin for his arrest.

On April 17, 1991, a Garden Grove police officer, with knowledge of the bulletin, stopped a red Nissan. Appellant Phan was the driver and sole

occupant. Under the rear seat, on the driver's side, the officer found three handguns: a loaded .45-caliber, and a .38-caliber and .25-caliber, both unloaded. He arrested appellant Phan.

Appellants were held to answer after separate preliminary hearings. Separate informations were filed and then consolidated. By amended information[3] appellants were charged with four counts of first degree residential robbery (§ 211; victim Minh Tran, count I; victim Patricia Tran, count II; victim Kimqui Do, count III; victim Duc Tran, count IV), one count of first degree residential burglary (§ 459; count VII), and felony assault against Kimqui Do (§ 245, subd. (a)(2); count V). Firearm enhancements were alleged as to each count against both appellants (§ 12022.5). Appellants were also charged with felony assault against Thanh Tran (§ 245, subd. (a)(1); count VI). A personal use of a deadly weapon enhancement was also alleged (§ 12022, subd. (b)). Appellant Phan only was charged with having been convicted of a felony and in possession of a firearm (§ 12021, subd. (a); count VIII). It was separately alleged appellant Phan had been convicted of two felonies (§§ 667, subd. (a), 667.5, subd. (b)).

A jury convicted appellants of all charges and found all allegations true. Appellant Phan waived jury regarding the prior felony allegations and the court found them true.

Both appellants were sentenced to state prison, appellant Phan for 21 years 8 months, appellant Nguyen for 16 years.

### DISCUSSION

1. *Appellant Phan contends a photograph shown to Kimqui Do was unduly suggestive, tainting both her in-trial and pretrial identification.*

Prior to trial, appellant Phan moved to exclude Kimqui Do's photo identification and her expected in-trial identification of him. An Evidence Code section 402 hearing was held. It consisted of the declaration of appellant Phan's trial counsel, the transcript of appellant Phan's preliminary hearing[4] (which included Kimqui Do's testimony), the district attorney's written response, five photo exhibits, and the argument of counsel. No witnesses testified.

---

[3]The amended information, although referred to in the reporter's transcript, is not included in the record on appeal.

[4]We reject the Attorney General's argument "that the preliminary hearing transcript was never in fact properly before the superior court." The notice of motion cited and quoted from it. The district attorney not only did not object (Evid. Code, § 353) but his written response extensively quoted the transcript.

The trial court denied the motion. ▮▮ Appellant Phan contends the trial court erred. Appellant Phan is mistaken.

▮ "Defendant bears the burden of showing unfairness as a demonstrable reality, not just speculation. [Citation.] 'The issue of constitutional reliability depends on (1) whether the identification procedure was unduly suggestive and unnecessary (*Manson* v. *Brathwaite* [(1977)] 432 U.S. [98,] 104-107 [53 L.Ed.2d 140, 147-149, 97 S.Ct. 2243] . . . ; and if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation (*id*. at pp. 109-114 . . .). If, and only if, the answer to the first question is yes and the answer to the second is no, is the identification constitutionally unreliable. (*Id*. at pp. 104-107, 109-114 . . . .)' " (*People* v. *DeSantis* (1992) 2 Cal.4th 1198, 1222 [9 Cal.Rptr.2d 628, 831 P.2d 1210].)

▮ Appellant Phan has failed to show *any* of the following: (1) the photo identification was unnecessary; (2) it was suggestive; or (3) that the identification was unreliable. We explain.

*Necessity.* Five days after the burglary-robberies the police had identified and arrested only one of the four perpetrators. Before witness memories dimmed it was essential other suspects be determined and witnesses be given an opportunity to identify or eliminate them. On March 22, 1991, the police attempted to do so. They arrested appellant Nguyen, determined that appellant Phan was a suspect, and obtained five "social" photos of him. On that same day they composed a six-person photo lineup (which included photos of both appellants) and showed it to witnesses, including Kimqui Do. She was able to only identify appellant Nguyen. Then she was asked to look at the five "social" photos. She did so and identified appellant Phan (it was his depiction in exhibit 5, a photo of seven men and one woman, all Asian, that she identified).

We are satisfied the police identification efforts on March 22, 1991, were both reasonable and necessary.

*Suggestiveness.*[5] ▮▮▮▮ Appellant Phan argues that the subject photo was impermissibly suggestive because it shows him with appellant Nguyen, whom Kimqui Do had just identified as one of the perpetrators.

---

[5]Even one-person "showups" are "not inherently unfair." (*People* v. *Hunt* (1977) 19 Cal.3d 888, 893 [140 Cal.Rptr. 651, 568 P.2d 376].) In *Manson* v. *Brathwaite* (1977) 432 U.S. 98 [53

We disagree. " 'A procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police.' " (*People* v. *Hunt, supra,* 19 Cal.3d 888, 894.) No claim is made the police suggested *any* of the five photos depicted a perpetrator or perpetrators. Nor is there anything about the exhibit 5 photo itself which links appellant Nguyen (in the foreground) any more to appellant Phan than to any of the other six Asian men (and one Asian woman) depicted. In any event, Kimqui Do was shown all *five* photos. All are group photos. All together well over 20 persons are depicted. We find nothing in the photographs, nor in the exhibit 5 photo, which singles out appellant Phan. We also note that these same photos were shown to both Patricia and Minh Tran (who had also already identified appellant Nguyen), yet neither identified appellant Phan.

*Reliability.* Kimqui Do had a full opportunity to view appellant Phan. She was with him for over 30 minutes, "looked straight in his face," and made a conscious effort to "stare at him." Her degree of attention could hardly have been higher: appellant Phan was a threat not only to her but to her children. She had seen him before, four days earlier when he had attempted to open her garage. And it was only five days after the burglary-robberies that she saw the photographs and identified him. Thereafter she identified him at a live lineup and at his preliminary hearing where the magistrate observed: "This witness seems to be quite positive in her testimony as to identification."

We find the trial court did not err in admitting Kimqui Do's identification testimony.

2. *Appellant Nguyen[6] contends there is insufficient evidence he aided and abetted the robbery of Minh Tran (count I).*

Appellant does not assert there is insufficient evidence Minh Tran was robbed. Nor does he claim there is insufficient evidence he was one of the four intruders who committed the instant offenses. Rather, he contends there is insufficient evidence—notwithstanding his presence—he aided and abetted in the particular robbery of Minh Tran. His argument amounts to this: since there was no evidence he encouraged an associate to rob Minh Tran or assisted in the taking of her ring or necklace, he was not an aider or abettor in her robbery.

---

L.Ed.2d 140, 97 S.Ct. 2243] a one-person photo showup identification, although both unnecessary ·and suggestive, was held sufficiently reliable to be admissible. See cases collected in *People* v. *Cooks* (1983) 141 Cal.App.3d 224, 305 [190 Cal.Rptr. 211].

[6]Because this and the remaining contentions are made only by appellant Nguyen, we shall simply refer to him as appellant.

Appellant is mistaken.

"All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed." (§ 31.) The application of this principle is illustrated by *People* v. *Durham* (1969) 70 Cal.2d 171 [74 Cal.Rptr. 262, 449 P.2d 198]. Durham was convicted of the first degree murder of a police officer fatally shot not by Durham but by his companion, Edgar Robinson. When Robinson shot the officer Durham "was crouched on one knee with his hands half raised and his palms spread at about shoulder level." (*Id.* at p. 177.) There was no evidence that immediately before the fatal shot Durham said or did anything to encourage Robinson to shoot. Despite this superficial absence of aiding and abetting evidence the Supreme Court affirmed the conviction. It stated: "[H]e was a party to a compact of criminal conduct which included within its scope the forcible resistance of arrest *and that he was also* 'present for the purposes of assisting in its commission' . . . ." (*Id.* at p. 181.) (Original italics.)

Similarly, when four men, in turn, each forcibly raped a victim, each man was convicted of *four* counts of forcible rape. (*People* v. *Mummert* (1943) 57 Cal.App.2d 849 [135 P.2d 665] overruled on other grounds by *People* v. *Collins* (1960) 54 Cal.2d 57, 60 [4 Cal.Rptr. 158, 351 P.2d 326].) In affirming the convictions the court explained how each had aided and abetted the offenses: "They aided and abetted by their actual presence, and by their acts they rendered actual assistance to the perpetrator. [Citation.] At the time of the rape by each of the men the other three stood near by and abetted the perpetrator by presenting a show of force and by keeping watch against intrusion. As each without resentment toward his acting confederate and without concern for the girl permitted the outrage, they exemplified a united and single purpose which would brook no interference. Each thus encouraged and aided his several companions and was therefore a principal in each of the crimes." (*Id.* at p. 855.)

In *People* v. *Moore* (1953) 120 Cal.App.2d 303 [260 P.2d 1011], appellant argued he could not be convicted of robbery because he was four or five feet from the other two defendants and neither did nor said anything during the robbery. The Court of Appeal affirmed the robbery conviction stating: "Appellant was not a mere bystander or onlooker. He may have committed no overt act during the robbery but none was required. His presence could have given encouragement to his companions and acted as a deterrent to any continued resistance on the part of [the victim]." (*Id.* at p. 306.) (See also *People* v. *Gonzales* (1970) 4 Cal.App.3d 593 [84 Cal.Rptr. 863] [One person fatally stabs victim. Three defendants, present at the stabbing and each

armed with a knife, convicted of murder]; *People v. Jones* (1969) 274 Cal.App.2d 614 [79 Cal.Rptr. 251] [Defendant was convicted of attempted robbery as an aider and abettor. X exited a car, boarded a stationary bus and attempted to rob the driver. Defendant was a passenger in the car X exited.].)

As in *Durham*, it is accurate to say appellant "was a party to a compact of criminal conduct," a compact which embraced the looting of the Tran residence[7] and all its occupants. The evidence is overwhelming that appellant was a principal in the robbery of Minh Tran.[8]

3. *Appellant contends there is insufficient evidence he robbed Duc Tran (count IV).*

Appellant's argument—insufficient evidence of aiding and abetting—is identical to the one we have just rejected in connection with the robbery of Minh Tran. We need not repeat our reasons: the argument is without merit.

■ Appellant also argues there was no evidence the taking of Mr. Tran's wallet was from his person or immediate presence and therefore the taking did not constitute a robbery.

Appellant is mistaken. Mr. Tran testified as follows:

"Q [By Prosecutor]: Did you lose any money?

"A I had only a few dollars *on* me. I'm talking about just myself.

"Q What else was taken *from* you?

"A There was only a few dollars in my wallet." (Italics added.)

4. *Appellant contends the trial court erred by failing to give sua sponte, a unanimity instruction concerning counts III (robbery of Kimqui Do) and VI (assault on Thanh Tran).*

■ Although Kimqui Do testified it was appellant Phan who robbed her and appellant (Nguyen) who held a knife to her son Thanh's hand,

---

[7]Even Paul Tran's backpack was searched. The robbers found and took an envelope containing $140.

[8]In closing argument appellant's trial counsel stated: "The issue here is not whether or not a group of men went into the Trans' house on the 17th of March of this year, committed robberies and basically terrorized that family. I don't contest that that happened . . . . That happened. Most definitely it happened."

In closing argument appellant Phan's trial counsel stated: "There is no doubt that the Tran family's residence was burglarized on March 17, 1991. There is no doubt that this robbery was a very, very traumatic experience for all the people involved."

appellant contends other evidence[9] indicated their roles were reversed and thus a unanimity instruction (CALJIC No. 17.01[10]) was required. We disagree.

■ "Where the evidence shows more than one act which could constitute the charged offense and the prosecution does not elect to rely on any one such act, a unanimity instruction is usually required. [Citations.] However, such instruction has uniformly been held unnecessary where a single charged offense is submitted to the jury on alternative legal theories of culpability, a common example being where a charge of first degree murder is supported on alternate theories of felony murder or willful, deliberate and premeditated killing. (Pen. Code, § 189.) It is held sufficient that each juror is convinced beyond a reasonable doubt that the defendant committed the offense *as that offense is defined by statute.* [Citations.] An aider and abettor is defined by California statute as a principal in the offense equally guilty with the perpetrator. [Citations.] It follows that jurors need not unanimously agree by which statute the defendant attains his status as a principal in the crime." (*People* v. *Forbes* (1985) 175 Cal.App.3d 807, 816-817 [221 Cal.Rptr. 275]; see *People* v. *Carrera* (1989) 49 Cal.3d 291, 311-312 [261 Cal.Rptr. 348, 777 P.2d 121]; *People* v. *Burns* (1987) 196 Cal.App.3d 1440, 1457-1459 [242 Cal.Rptr. 573]; *People* v. *Harris* (1985) 175 Cal.App.3d 944, 952-953 [221 Cal.Rptr. 321]. *People* v. *Melendez* (1990) 224 Cal.App.3d 1420 [274 Cal.Rptr. 599] is distinguishable.)

5. *Appellant contends the trial court erred by failing to give sua sponte, a unanimity instruction concerning counts V (assault on Kimqui Do) and VI (assault on Thanh Tran).*

■ This contention is identical to the previous one. We reject it for the same reasons.

We add this note. The sole issue at trial was identity. (See fn. 8, *ante.*) Evidence of the mutual participation, coordination, and shared intent of the four perpetrators was uncontradicted and overwhelming. In such circumstances—when four armed robbers enter a residence together, remain in the

---

[9]When Detective Foltz first interviewed Kimqui Do he relied upon one of her children to interpret. His report states she said appellant Nguyen grabbed and robbed her. Later interviews were consistent with her trial testimony.

[10]The instruction reads: "The defendant is accused of having committed the crime of _____ [in Count _____]. The prosecution has introduced evidence tending to prove that there is more than one [act] [or] [omission] upon which a conviction [on Count _____] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of such [acts] [omissions]. However in order to return a verdict of guilty [to Count _____], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict."

residence committing robberies and assaults, coordinate their actions by word and deed, and escape together—all the perpetrators are legally culpable.

6. *Appellant contends counts III (robbery of Kimqui Do) and VI (assault on Thanh Tran) are part of a single course of conduct and the trial court erred in imposing double punishment (§ 654).*

 Our reading of the record indicates that the robbery of Kimqui Do and the threat to cut off the hand of her eight-year-old son Thanh were *separate* and divisible acts. First, immediately upon her arrival, she was grabbed by appellant Phan and forced to give him her wallet containing $800. Second, thereafter appellant Phan and the other robbers repeatedly demanded *more* money from her. It was these later demands and her inability to satisfy them that provoked the threat to cut off Thanh's hand.

 But, even assuming the two offenses are part of "a single course of conduct," appellant "may nevertheless be punished for multiple convictions if during the course of that conduct *he committed crimes of violence against different victims.*" (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552], italics added. See also *People* v. *Masters* (1987) 195 Cal.App.3d 1124, 1127 [241 Cal.Rptr. 511]; *People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 116 [212 Cal.Rptr. 888].) Robbery and felony assault are both crimes of violence. Since the two offenses had different victims, the trial court properly punished appellant for both.

DISPOSITION

The judgments are affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 14, 1993.