[No. H012071. Sixth Dist. Jan. 26, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GONZALES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IIIB.

## COUNSEL

Jill M. Bojarski, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman, Violet M. Lee and Matthew Boyle, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## COTTLE, P. J.—

### I. INTRODUCTION

Defendant Robert Gonzales was charged by information with first degree burglary (Pen. Code, §§ 459, 460, subd. (a)).[1] The information alleged three prior serious felony convictions (§ 667.5, subd. (a)) and four prior prison terms (§ 667.5, subd. (b)). A jury found defendant guilty of the substantive charge; in a separate proceeding, the trial court found all the enhancement prior allegations true. Defendant was sentenced to state prison for 22 years.

On appeal defendant contends reversal is required because the trial court had a sua sponte duty to give a unanimity instruction. In the unpublished portion of the opinion we address his claim that his trial counsel provided ineffective assistance by failing to object to certain evidence introduced to establish the residential nature of his prior burglary convictions.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

## II. FACTS

At approximately 9 a.m. on December 9, 1992, Laura Graham left her home at 1077 Audubon Drive in San Jose to go shopping. No one was home when she left.

About 12:30 p.m., Graham's next-door neighbor, Pedro Lafuente, looked out his living room window and saw two people enter Graham's front yard as though they were going to the front door. Lafuente knew no one was there because there were no cars in the driveway and he had seen Graham leave. After watching the two people for a few minutes, Lafuente went to his garage window to get a better view of Graham's front yard. From the garage, Lafuente could see the two men "milling around." He noticed that one of the men, later identified as defendant, had a stiff left ring finger and wore a blue windbreaker and blue jeans. Defendant looked over the fence into the back yard and tried unsuccessfully to open Graham's side garage door. Defendant then rejoined his companion in the area of the front porch. Although Lafuente lost sight of the men at this point, he could hear a pounding noise, like a foot or a shoulder hitting against something. He called 911 and was told to "just observe." A few minutes later, he saw the men emerge from the direction of the front door. Defendant's companion was carrying a green box.

When Graham returned home about 1 p.m., she discovered that her VCR, about $40 of loose change, a pocket knife still in its original box, and some Mexican currency were gone from her house. A green box large enough to fit the VCR was missing.

When Officer Como responded to a report of the residential burglary, Lafuente told Como that one of the suspects wore a brown beanie cap and a distinctive red sweatshirt while the other wore a blue windbreaker and had a goatee. Como recalled having seen two people fitting the descriptions earlier that morning.

Como drove off and saw defendant and the other suspect walking out of an apartment complex a few blocks away. When Como asked them to come over to his patrol car, the two suspects took off running. Officer Ureta, who had arrived on the scene, ran after defendant and apprehended him, while Como caught the other suspect.

The police transported Lafuente to the scene of the arrests where Lafuente positively identified both suspects as the individuals he saw outside Graham's residence. Although defendant's blue windbreaker was turned inside

out so its gray lining was on the outside, Lafuente specifically identified defendant's stiff ring finger.

When defendant was searched, the police found a pocket knife in a box and $5.90 worth of loose change. Officer Burde noticed that defendant's ring finger did not bend. The other suspect, Rene Lanozura, had in his possession 32,500 Mexican pesos in paper currency.

At trial, Lafuente identified defendant as one of the burglars, testifying that he saw defendant leave the porch area of Graham's house but did not actually see him go through the front door. Graham testified that the knife found on defendant after his arrest was the one taken from her home.

Defendant testified on his own behalf that he met Lanozura on December 8, 1992, and that the next day Lanozura asked him to accompany him to his girlfriend's house to retrieve some belongings. They walked up the driveway together. Lanozura asked defendant to look over on the right for a box containing Lanozura's belongings. While Lanozura knocked at the front door, defendant went to the area near Graham's garage door. He looked near the garbage cans by the fence and tried the garage door to see if it was open because Lanozura had asked him to do so. Not finding the box, defendant went back down the driveway toward the front of the house. There he met up with Lanozura who was carrying a green box. Defendant asked Lanozura if he "got his stuff," and Lanozura replied, "Yes." They left together. Defendant testified he did not see Lanozura enter the house or take anything from it. Defendant denied looking inside the box. Defendant and Lanozura walked to the apartment complex on Owlsey where Lanozura put the box in his car. Defendant pitched coins with some people. Lanozura gave him a knife in return for defendant's promise to pay him later. When the police car pulled up, Lanozura ran, and defendant started running "out of reaction" because Lanozura had run. Defendant said the $5.90 worth of change found on him were his winnings from pitching coins.

On cross-examination, defendant admitted he had previously been convicted of robbery, possession of stolen property, and auto theft.[2]

### III. Discussion

#### A. *Unanimity Instruction*

■ The prosecutor argued that defendant's liability could be predicated on either his actual entry into the house or on aiding and abetting his

---

[2]The trial court had ruled that the prosecution could not impeach defendant with his two prior convictions for burglary because their probative value was outweighed by the potential for prejudice.

companion Rene Lanozura. Defendant contends the trial court erred by failing to instruct the jury sua sponte, pursuant to CALJIC No. 17.01,[3] that it must unanimously agree which acts defendant committed which constitute burglary. We disagree.

Defendant relies upon *People* v. *Melendez* (1990) 224 Cal.App.3d 1420 [274 Cal.Rptr. 599], a case involving a prosecution for second degree robbery in which the prosecution presented evidence that the defendant was seen inside the store that was robbed, that he was seen in the car in which the robbers arrived, and that he was seen in the getaway car. (*Id.* at pp. 1423-1424.) The prosecution argued that the defendant was guilty as either an aider and abettor or a conspirator. The *Melendez* court found error in the failure to give the unanimity instruction and held that "[w]here a single crime can be proven by different theories based on different acts and at least two of these theories rely on different evidence, and where the circumstances demonstrate a reasonable possibility that a juror will find one theory proven and the other not proven but that all of the jurors will not agree on the same theory, a unanimity instruction must be given." (*Id.* at pp. 1433-1434.)

The holding in *Melendez* has been expressly and impliedly rejected by every court that has since considered the issue.

In *People* v. *Beardslee* (1991) 53 Cal.3d 68 [279 Cal.Rptr. 276, 806 P.2d 1311], the prosecution presented evidence that defendant allowed the victim to be lured to his apartment, assisted in transporting her to a deserted roadside to be killed, loaded the shotgun for Forrester who shot the victim twice, and then shot her himself. The prosecution argued defendant should be convicted of murder either because he fired the fatal shot with intent to kill or as an aider and abettor. The court rejected defendant's claim the jury should have been instructed that they must unanimously agree "whether [he] was the actual perpetrator or was an aider and abettor." (*Id.* at p. 92; see also *People* v. *Forbes* (1985) 175 Cal.App.3d 807, 816-817 [221 Cal.Rptr. 275].)

The court explained that "even if some jurors concluded that defendant was the actual perpetrator and others concluded he was only an aider and abettor, there is no possibility that they disagreed on the facts necessary to

---

[3]CALJIC No. 17.01 states: "The defendant is accused of having committed the crime of _____ [in Count ___]. The prosecution has introduced evidence tending to prove that there is more than one [act] [or] [omission] upon which a conviction [on Count ___] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of such [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count ___], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict." (CALJIC No. 17.01 (5th ed. 1988).)

support the aiding and abetting theory. The jurors who concluded that defendant intentionally killed Patty with premeditation and deliberation necessarily would have believed that if he was not the actual killer, he intentionally encouraged and facilitated the actual killer's perpetration of first degree murder. Since the jury had to agree unanimously at least on the facts required for conviction as an aider and abettor, and for application of the special circumstance findings to a person who was not the actual killer [], no further unanimity was required, and the unanimity instruction was not necessary." (*People* v. *Beardslee, supra,* 53 Cal.3d at pp. 93-94.)

In *People* v. *Davis* (1992) 8 Cal.App.4th 28 [10 Cal.Rptr.2d 381], the defendant, who had been convicted of robbery, contended the jury should have been given a unanimity instruction because evidence was presented which suggested that he either entered the store or remained in the car during the robbery. (*Id.* at p. 32.) The *Davis* court concluded that *Melendez* was wrongly decided and held that "[j]urors need not unanimously agree on whether the defendant is an aider and abettor or a principal even when different evidence and facts support each conclusion." (*Id.* at p. 45.) The *Davis* court observed that most jurisdictions that have considered the issue have adopted the *Sullivan* rule (see *State* v. *Sullivan* (1903) 173 N.Y. 122 [65 N.E. 989]), which requires that the jurors unanimously agree about the ultimate issue of guilt but does not require unanimous agreement on the theory of the crime or the theory of participation or the facts in support of either of these theories. (*Davis, supra,* 8 Cal.App.4th at p. 34.) The court in *Davis* reasoned as follows: "The position of the courts adhering to the *Sullivan* rule is that where there is a single offense and a single charge, it is the task of each juror to conclude, based perhaps on very different theories, whether the defendant is guilty or not guilty. It is simply of no consequence that some jurors believe the defendant is guilty based on one theory while others believe he is guilty on another even when the theories may be based on very different and even contradictory conclusions concerning, for example, the defendant's basic intent in committing the crime. [¶] We see no reason to apply a different rule with regard to theories of criminal participation. The Legislature has determined those who aid and abet and those who actually perpetrate the offense are principals and equally culpable. (§ 31.) Clearly, criminal law is ultimately concerned with ascribing criminal responsibility for discrete events. This is done by defining crimes, for example, first degree murder, and by determining who will be responsible for those crimes, for example, aider and abettors and direct perpetrators. Once the discrete event is identified, for example, the killing of a particular human being, the theory each individual juror uses to conclude the defendant is criminally responsible need not be the same and, indeed, may be contradictory." (8 Cal.App.4th at p. 45.)

In *People* v. *Phan* (1993) 14 Cal.App.4th 1453 [18 Cal.Rptr.2d 364], defendant and his companions entered a family residence where they robbed and assaulted some of its occupants. Defendant claimed the trial court erred in failing to give a unanimity instruction sua sponte because one victim testified defendant robbed her and a cohort held a knife to her son's hand while other evidence indicated that the roles were reversed. (*Id.* at pp. 1464-1465.) The court held that it is " 'sufficient that each juror is convinced beyond a reasonable doubt that the defendant committed the offense *as that offense is defined by statute.* [Citations.] An aider and abettor is defined by California statute as a principal in the offense equally guilty with the perpetrator. [Citations.] It follows that jurors need not unanimously agree by which statute the defendant attains his status as a principal in the crime.' (. . . . *People* v. *Melendez*[, *supra*,] 224 Cal.App.3d 1420 [] is distinguishable.)" (*People* v. *Phan, supra,* 14 Cal.App.4th at p. 1465.)

In *People* v. *Sutherland* (1993) 17 Cal.App.4th 602 [21 Cal.Rptr.2d 752], the defendant was charged with forgery based on the alternative theories that he forged and uttered the check. (*Id.* at p. 610.) The jury was not given a unanimity instruction. In joining *Davis* in the conclusion that *Melendez* was incorrectly decided, the *Sutherland* court reasoned that "*Davis* correctly concludes that the potential disagreement of the jury about what the defendant did is not important where the inconsistency is legally irrelevant, i.e., the disagreement about the acts does not undermine the unanimous legal conclusion that based on either act, the defendant has committed a single charged offense. [Citations.] Thus, on the facts of *Melendez* and of *Davis* no unanimity instruction was required because there is no legally significant difference between acts that amount to aiding and abetting a single robbery, and acts which constitute the robbery itself; if either scenario is proven, the defendant is guilty of just one robbery. For that reason, we agree with *Davis* that under established California law, no unanimity instruction is required to prevent a less than unanimous verdict where the evidence independently proves acts which support the defendant's liability either as a principal or as an aider and abettor." (*Id.* at pp. 616-617.)

In *People* v. *Snead* (1993) 20 Cal.App.4th 1088 [24 Cal.Rptr.2d 922], the trial court instructed the jury that the special circumstances could be found true if defendant was " 'the actual killer, a co-conspirator or an aider or abettor.' " The jury was not given a unanimity instruction. In rejecting the claim of error, the court noted that *Melendez* had been "persuasively criticized" by *Davis* and *Sutherland.* (*Id.* at p. 1095.) It added that "our Supreme Court considered the issue in *People* v. *Beardslee*" and held that "a conviction of second degree murder did not require unanimous agreement by the

jurors on whether the accused was the actual perpetrator or was an aider and abettor." (*Id.* at pp. 1095-1096.)

In *People* v. *Perez* (1993) 21 Cal.App.4th 214 [26 Cal.Rptr.2d 691], the defendant, convicted of second degree robbery, claimed the jurors could have disagreed as to the exact act he committed because the prosecution asserted two separate criminal acts, that he either entered and robbed the store or drove the car to the store. (*Id.* at p. 217.) Rejecting defendant's claim that CALJIC No. 17.01 should have been given, the court in *Perez* found *Davis* a better-reasoned decision than *Melendez* because, "[a]lthough the conclusion in *Melendez* is a logical extension of earlier, established principles, the court failed to address a critical issue. The *Melendez* rule rewards the defendant who is guilty of more than one role in the charged crime. Under its rationale, the defendant who sits in the car and later enters the store, actually committing both acts, is not convicted if all jurors do not unanimously agree on at least one act. On the other hand, the defendant who only waits in the car or only enters the store does not have the advantage of splitting the vote. The result therefore rewards defendants who present evidence they committed more than one act, confuse the jury and then exploit that confusion when the jurors cannot agree." (21 Cal.App.4th at p. 222.)

The court also agreed with *Davis* that " 'the complexity of the law and the complexity of criminal conduct make any other position so potentially instructionally difficult, and complicated, and so potentially confusing to jurors that any other rule is, as a practical matter, unacceptable. [Citations.]' [Citation.]" (*People* v. *Perez, supra,* 21 Cal.App.4th at pp. 222-223.)

The prosecutor told the jury defendant's guilt could be based on either of two theories: that he entered the residence with the intent to commit theft or that he aided and abetted the burglar. He told the jury that it did not need to be unanimous as to the theory and argued that the most reasonable theory of guilty was that defendant entered the house with the intent to commit theft.

We too find *Davis* a better reasoned decision than *Melendez.* Following *Davis,* we conclude that the failure to give CALJIC No. 17.01 was not erroneous because it was not necessary for the jury to unanimously agree whether defendant was the direct perpetrator or had aided and abetted the burglary.

B.   *Ineffective Assistance of Counsel**

. . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1248.

## IV. DISPOSITION

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

A petition for a rehearing was denied February 21, 1995, and appellant's petition for review by the Supreme Court was denied May 10, 1995.