Filed 6/1/26  P. v. Stratton CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>TED MARLON STRATTON,<br><br>　　Defendant and Appellant. | 2d Crim. No. B346327<br>(Super. Ct. No. 24LBCF00917)<br>(Los Angeles County) |

Ted Marlon Stratton appeals from the judgment after a jury convicted him of second degree burglary (Pen. Code,[1] § 459; count 1), assault with a deadly weapon (§ 245, subd. (a)(1); count 2), resisting an executive officer (§ 69; count 3), and criminal threats (§ 422, subd. (a); count 4).  Stratton was sentenced to five years in state prison, including a principal term of three years for count 2, and subordinate consecutive eight-month sentences for each remaining count.  Stratton contends the trial court erred by

---

[1] Further unspecified statutory references are to the Penal Code.

not staying his sentence for either assault with a deadly weapon or criminal threats pursuant to section 654. We affirm.

FACTS AND PROCEDURAL HISTORY

In July 2024, Stratton used an object to break a glass window of a storeroom of an apartment complex. He took two bicycles from inside the storeroom and walked them toward a gas station across the street. The apartment's security officer Dellon Belisle responded to a call to the storeroom. A woman told Belisle, "He's right there," indicating that Stratton, who was across the street, took the bicycles.

Belisle crossed the street to retrieve the bicycles. When Belisle took the bicycles from Stratton, Stratton made "life-threatening statements." He said that he was going to hurt Belisle and asked if he wanted to "get stabbed over" the bicycles. Belisle took these threats seriously, was afraid of Stratton, and placed the bicycles between him and Stratton to create distance. Belisle began to walk back across the street with the bicycles when Stratton pulled out a knife, pulled a bicycle toward him, and made threats to Belisle while "advancing towards" him. At one point, Belisle was turned toward Stratton when Stratton lunged toward Belisle while holding the knife. Stratton was about an "arm's distance" away and close enough to stab Belisle. Belisle said he was scared for his life. The video of this interaction was presented to the jury.

A police officer arrived on scene and gave Stratton commands, which he ignored. Stratton threw the knife to the ground. The officer tackled Stratton because of his noncompliance, and Stratton physically "resist[ed]." Stratton was eventually handcuffed and taken into custody.

The jury found Stratton guilty of all four counts. As to the criminal threats offense (count 4), the jury found Stratton personally used a deadly and dangerous weapon (a knife). (§ 12022, subd. (b)(1).)

At sentencing, the trial court sentenced Stratton to a total of five years, consisting of the midterm of three years for assault with a deadly weapon and consecutive eight-month terms (one-third the midterm) for each remaining count. The court stayed the one-year weapons enhancement (§ 12022, subd. (b)(1)) on count 4 pursuant to section 654.

DISCUSSION

Stratton contends the sentence for either assault with a deadly weapon or criminal threats should have been stayed pursuant to section 654. We disagree.

Section 654, subdivision (a) provides that an "act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) " ' " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may [not] be punished . . . for more than one.' " ' " (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in

3

pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).)

"[A] course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935; *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1255; see also *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 (*Trotter*) [three gunshots were considered separate assaults because each shot was "volitional and calculated, and were separated by periods of time" during which reflection was possible].)

"When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) Thus, we must view the evidence in the light most favorable to the judgment and presume the existence of every fact to support it that is reasonably deduced from the evidence. (*Id.* at pp. 1312–1313.)

4

We conclude substantial evidence supports the trial court's implied finding that Stratton harbored separative objectives and intents when he assaulted and also threatened Belisle. A person commits a criminal threat when they "willfully threaten[] to commit a crime which will result in death or great bodily injury . . . with the specific intent that the statement . . . is to be taken as a threat . . . and thereby causes that person reasonably to be in sustained fear for their own safety." (§ 422, subd. (a).) A person commits assault with a deadly weapon when they make an "unlawful attempt, coupled with a present ability, to commit a violent injury" with a deadly weapon other than a firearm. (§§ 240, 245, subd. (a)(1).)

Here, Belisle's testimony and a video of the incident reflects Stratton made "life-threatening" statements and told Belisle he was going to hurt him. About 30 seconds after the threats began, Stratton took out a knife while continuing to make the "life-threatening" statements. Belisle testified that thereafter, Stratton "lunged" toward him with the knife, and that he was about an "arm's distance" away and close enough to stab Belisle. The evidence, when viewed in the light most favorable to the judgment, reflects two separate acts separated in time—(1) threatening to stab or hurt Belisle and (2) lunging toward Belisle with the knife. There is about a minute in between when Stratton's threats began and when Stratton lunged toward him with a knife. A minute is sufficient time for a person to reflect and renew their intent to commit another offense. (*Trotter*, *supra*, 7 Cal.App.4th at p. 368 [one minute between gunshots was sufficient period of time during which reflection was possible].)

*In re Raymundo M.* (2020) 52 Cal.App.5th 78, is instructive. There, the court held that the trial court "could

5

reasonably have found that [the juvenile] committed the assault with the objective of inflicting *physical* harm on [the victim], whereas [the juvenile] criminally threatened [the victim] with the separate objective of inflicting *mental or emotional* harm." (*Id.* at p. 95.) As the *Raymundo M.* court observed, "[c]ourts routinely recognize similar distinctions." (*Ibid.*, citing to *People v. Mejia* (2017) 9 Cal.App.5th 1036, 1047; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1022; *People v. Louie* (2012) 203 Cal.App.4th 388, 398; *People v. Phan* (1993) 14 Cal.App.4th 1453, 1466; *People v. Tom* (2018) 22 Cal.App.5th 250, 261.)

Similarly, we conclude that Stratton's "assault and criminal-threat counts arose from separate conduct that the [trial] court could reasonably have concluded were undertaken pursuant to separate objectives." (*Raymundo M.*, *supra*, 52 Cal.App.5th at p. 95.) The trial court could have reasonably found that when Stratton threatened Belisle, he intended to instill fear into him and cause him emotional or mental harm. And when Stratton assaulted Belisle with a knife, he intended to cause him physical harm. (*Ibid.*) Thus, the trial court could have reasonably found that Stratton's objectives in threatening and assaulting Belisle were independent of, and not merely incidental to, each other. (*Harrison*, *supra*, 48 Cal.3d at p. 335.) We therefore conclude the trial court did not err by not staying the sentence for either the assault or the criminal threats count under section 654.

We do not interpret the trial court's stay of the weapons enhancement on the criminal threats conviction or the prosecutor's statement acknowledging the stay as indication that the court found the assault and criminal threats offense to be an

6

indivisible course of conduct.[2]  In our view, the trial court's decision to stay the one-year weapons enhancement on count 4 does not mean the trial court necessarily found the assault and criminal threat to be committed pursuant to the same objective. The court could reasonably find the intent and objective behind the criminal threats (instilling fear) separate from the intent and objective behind the assault (physical harm) while staying a punishment for the use of a weapon common to both offenses. (See, e.g., *People v. Wynn* (2010) 184 Cal.App.4th 1210, 1218–1221 [defendant properly sentenced to consecutive sentences for burglary and assault convictions even though weapons enhancement on burglary count stayed].)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.                    CODY, J.

---

[2] Stratton raises an argument regarding the refusal of an unanimity instruction for the first time in the reply brief.  This argument is forfeited because it was not raised in the opening brief.  (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93.)

7

James D. Otto, Judge

Superior Court County of Los Angeles

_____

Nicole Kronberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Megan A. Banke, Deputy Attorneys General, for Plaintiff and Respondent.