[No. F001928. Fifth Dist. Oct. 30, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
GAUDENCIO DUARTE, Defendant and Appellant.

COUNSEL

Richard A. Lieberman, under appointment by the Court of Appeal, and Berman & Glenn for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOOLPERT, J.**—We affirm a judgment with a modification of sentence to prohibit the subsequent penal and administrative use of more than one of two convictions arising from a single act of driving after excessive drinking. We also find that a municipal court record which appeared to raise a question concerning the need for an interpreter was insufficiently challenged by defendant's mere reference to a "silent record" and failure to present affirmatively some evidence that he was deprived of a needed interpreter.

After jury trial defendant was convicted of violations of Vehicle Code section 23153, subdivisions (a) (driving under the influence and causing bodily injury) and (b) (driving with a blood alcohol level of 0.10 percent or more and causing bodily injury), and Penal Code section 192, subdivision

3(a) (vehicular manslaughter) as it read at that time.[1] In a bifurcated proceeding the jury found that defendant had been convicted of two violations of former section 23102 within five years of the present violations of section 23153. The trial court had earlier denied a defense motion to set aside the two prior convictions. On appeal from the judgment, defendant contends the trial court erred in denying this motion because the documents pertaining to each prior conviction indicated an interpreter was needed, but not that one was provided.

Defendant was sentenced to prison for a total of three years. The sentence was imposed as follows: count one, violation of section 23153, subdivision (a) (driving under the influence), the middle base term of three years; count two, violation of section 23153, subdivision (b) (driving with a blood alcohol level of 0.10 percent or greater), three years; count three, violation of Penal Code section 192, subdivision 3(a) (vehicular manslaughter), two years. The sentences on counts two and three were stayed pending appeal. The stays were to become permanent upon completion of the unstayed term. Appropriate credits were given.

### PRIOR CONVICTIONS: "NEEDS INTERPRETER"?

At the hearing on the motion, the prosecution produced certified copies of the complaints and change of plea forms in two prior municipal court actions. Each form contained the recital "After consultation with my attorney I understandingly, knowingly, intelligently and voluntarily *waive* [*give up*] in this case each and every right hereinafter initialed by me" followed by an itemization of the applicable *Boykin-Tahl* rights. Both forms bore defendant's signature, as well as his initials beside each particular right. Also, the forms contained the recital, "I have explained to defendant each of his rights . . ." followed by the signature of defendant's attorney at the time. Finally, in the upper left corner of each form was the written notation "needs interpreter." However, neither document expressly indicated that an interpreter was provided.

Defendant's trial counsel argued, in essence, that because the record on its face failed to show that an interpreter was present, "or that those rights were explained to him in Spanish," the record failed to satisfy *Boykin-Tahl* requirements. In ruling to the contrary, the trial court presumed from the plea form notation "that the court would not proceed without being satisfied that there was either an interpreter present or that [the] need for interpretation had been satisfied." The trial court also relied on defendant's signed statement that he knowingly, etc., waived his rights, followed by his

---

[1]All statutory references are to the Vehicle Code unless otherwise indicated.

initials beside each right, as well as the signed statement of defendant's counsel that he had explained the rights to defendant. The trial court concluded that the plea forms did show the requisite awareness and waivers of *Boykin-Tahl* rights.[2]

In *Tahl,* our Supreme Court held that before a defendant's guilty plea is accepted, "[T]he record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (*Id.,* at p. 132, original italics.) Later, in *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273], the court approved the use of a waiver form in lieu of a defendant's personal appearance in misdemeanor proceedings. Finally, in *In re Ibarra* (1983) 34 Cal.3d 277 [193 Cal.Rptr. 538, 666 P.2d 980], the court held that a sufficiently explicit waiver form may be used "in those felony cases which do not involve special circumstances which might indicate that a plea is otherwise involuntary, . . ." (*Id.,* at p. 285.)

The change of plea forms used in these two prior misdemeanor cases *on their face* directly show that defendant was aware of, and gave up, each of his *Boykin-Tahl* rights. Thus, the forms fully complied with *Boykin, Tahl,* and *Mills.* However, defendant seeks to add a new requirement to *Boykin-Tahl*: That where the record in any way suggests a defendant may need an interpreter, the record must contain *on its face* direct evidence that an interpreter was provided. In our case, defendant's argument is tantamount to saying an unexplained indication on the record that an interpreter might be required for the defendant undermines an otherwise facially valid guilty plea form *unless* the record expressly shows an interpreter in fact was provided. This extreme position is not the law.

The change of plea forms do not indicate whether *in fact* defendant required an interpreter or the guilty plea judge so found. The "needs interpreter" entry on the forms may have been made by the guilty plea judge, a court attaché, defendant's former counsel, or some other person. The record before the trial court did not establish that in fact defendant was entitled to, or was denied, an interpreter in the earlier proceedings. (See *People* v. *Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198].)

Our decision is consistent with *Aguilar,* which reversed the defendant's conviction where the interpreter appointed by the trial court, on a finding

---

[2]*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], certiorari denied, *Tahl* v. *California* (1970) 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708].

of necessity, became unavailable to the defendant during the testimony of two Spanish-speaking prosecution witnesses. The court held defense counsel's acquiescence did not establish the requisite personal, voluntary, and knowing waiver. Where, as here, the record fails to establish either an initial entitlement to, or later deprivation of, an interpreter, no waiver issue arises.

A significant question arises concerning the manner in which the motion was presented by the defendant. We find nothing in the record, or even in the briefs on appeal, to indicate an awareness of section 23208.[3] This section is a codification of the procedure to be followed in "drunk driving" cases to determine the constitutional validity of prior convictions, a procedure first suggested in *People* v. *Coffey* (1967) 67 Cal.2d 204, 217-218 [60 Cal.Rptr. 457, 430 P.2d 15]. The statute has withstood a challenge that it places a greater burden of proof on the People than intended by *Coffey*. (*Worsley* v. *Municipal Court* (1981) 122 Cal.App.3d 409, 418-422 [176 Cal.Rptr. 324].)

Section 23208 requires the defense motion to be made in writing, in advance of trial and with "specificity." In this case the record contains no written motion. It appears the matter was brought to the court's attention only by a denial of the priors and later by oral statements of defense counsel making the "silent record" argument. At no time did defendant allege or seek to prove he needed an interpreter when the waiver forms were discussed with previous counsel, or when the written waivers were initialed,

---

[3]Section 23208: "(a) In any proceedings to have a prior judgment of conviction of a violation of Section 23152 or 23153 declared invalid on constitutional grounds, the defendant shall state in writing and with specificity wherein the defendant was deprived of the defendant's constitutional rights, which statement shall be filed with the clerk of the court and a copy served on the court that rendered the prior judgment and on the prosecuting attorney in the present proceedings at least five court days prior to the hearing thereon.

"(b) The court shall, prior to the trial of any pending criminal action against the defendant wherein the prior conviction is charged as such, hold a hearing, outside of the presence of the jury, in order to determine the constitutional validity of the charged prior conviction issue. At the hearing the procedure, the burden of proof, and the burden of producing evidence shall be as follows:

"(1) The burden of proof remains with the prosecution throughout and is that of beyond a reasonable doubt.

"(2) The prosecution shall initially have the burden of producing evidence of the prior conviction sufficient to justify a finding that the defendant has suffered that prior conviction.

"(3) After the production of evidence required by paragraph (2), the defendant then has the burden of producing evidence that the defendant's constitutional rights were infringed in the prior proceeding at issue.

"(4) If the defendant bears this burden successfully, the prosecution shall have the right to produce evidence in rebuttal.

"(5) The court shall make a finding on the basis of the evidence thus produced and shall strike from the accusatory pleading any prior conviction found to be constitutionally invalid."

signed and presented to the court. At no time did he allege or state that a needed interpreter was not present.

Because the oral motion was made without objection from the People, the requirements of a noticed written motion and specificity may have been waived. However, we need not determine whether the section 23208 prehearing requirements were subject to waiver. The motion was properly denied on nonstatutory grounds.

A motion to strike priors must be made with sufficient certainty to *raise* the issue. This can be done by a simple defense allegation that a specific constitutional right was not afforded. Unless such an allegation is made, a "silent record" allows the presumption that official duty has been performed. The defendant must challenge the presumption with the direct allegation of a denied right. Once the issue is raised, the court must hold a hearing. During the hearing the burden of producing evidence shifts. The prosecution must first produce sufficient evidence of the prior conviction. Then the defendant must offer evidence that the constitutional right concerned was infringed. Finally, the prosecution may offer evidence in rebuttal. (*People* v. *Coffey, supra,* 67 Cal.2d at p. 217.)

In the recent case of *People* v. *Sumstine* (1984) 36 Cal.3d 909 [206 Cal.Rptr. 707, 687 P.2d 904], these rules were reaffirmed. The court made it clear that the defendant must be specific, and cannot start the review process by merely relying on a silent record. Likewise, once the defendant has produced evidence of an infringed right, the prosecution can no longer hide behind a silent record and the presumed performance of duty.

The prior convictions before us involved personal appearance and record requirements less strict than those in *Sumstine,* due to the misdemeanor status of the convictions. The "interpreter needed" notation may well have been a mere suggestion in the event of trial, rather than plea. However, if in fact an interpreter was needed but not provided, defendant here was required both to allege the actual denial of his right to an interpreter, and to go forward and put on some proof tending to show his constitutional right was infringed. He did not do so. Failing to carry the burden, the court properly denied the motion.

The record fully satisfied *Boykin-Tahl-Mills* requirements. Defendant failed to meet the requirements of *Sumstine* and section 23208. The trial court did not err in denying defendant's motion to set aside the two prior convictions.

CONVICTION OF SECTION 23153, SUBDIVISIONS (a) AND (b).

This court requested and received supplemental briefing on the question whether defendant was properly convicted of violating both subdivisions of section 23153. This is not merely an academic issue. If both convictions continue to be viable as priors and defendant is arrested again on a similar charge, the obvious result will be a charge of two priors arising from one act. Dual convictions of this type, with or without one or more proven prior convictions, are not solely a judicial matter. Such convictions also have an immediate administrative consequence because the Department of Motor Vehicles has a duty to act after receipt of proper notice of such convictions. (Veh. Code, § 13352, subd. (a).) The action of the department will be in the form of mandatory suspension or revocation of the driving privilege. The period of mandatory revocation or suspension will vary depending upon which section or sections were violated, and when the violation or violations occurred, as well as the number of prior convictions the defendant has suffered. (See, e.g., Veh. Code, §§ 13352, subd. (a)(1)-(7); 23160; 23165; 23170; 23175; 23180; 23185; and 23190.)

In considering this issue we look to precedent involving section 23152 (no bodily injury) as well as section 23153 (with bodily injury). With the exception of bodily injury, the two sections are essentially the same; we therefore treat them similarly in this discussion. We quote, for purposes of comparison, subdivision (a) in full, and the pertinent part of subdivision (b) of each section as they read at the time of the present offenses.

Section 23152: "(a) It is unlawful for any person who is under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle.

"(b) It is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle."

Section 23153: "(a) It is unlawful for any person, while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes death or bodily injury to any person other than the driver.

"(b) It is unlawful for any person, while having 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes death

or bodily injury to any person other than the driver." (Stats. 1982, ch. 53, §§ 26, 27, pp. 172-173.)

Section 23152, subdivision (b), has been comprehensively reviewed, with approval of its constitutional aspects. Its importance in dealing with "the horrific risk imposed by those who drink and drive" has been noted with emphasis. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 262 [198 Cal.Rptr. 145, 673 P.2d 732], cert. den. (1984) — U.S. — [80 L.Ed.2d 812, 104 S.Ct. 2337].) We need not dwell further on the significance of the legislation which made it a criminal act to drive with a specific blood alcohol level while retaining the longstanding "driving under the influence" crime which is directed to the driver's subjective behavior and condition.

■ Subdivision (b) establishes a new and separate offense. It does not provide a mere alternative definition of "driving under the influence," and it does not constitute a lesser included offense of that proscribed in subdivision (a). (*Id.*, at p. 265.) Therefore, it remains a prosecutorial function to determine whether the defendant is to be *charged* with violating one or both subdivisions.

Because neither subdivision describes a lesser included crime of the other, dual convictions are both possible and proper. (*People* v. *Rocha* (1978) 80 Cal.App.3d 972, 975 [146 Cal.Rptr. 81].) However, a problem arises when the defendant suffers convictions under both subdivisions. What must the sentencing judge do? Is dual punishment permissible? If the convictions survive appeal, are they both viable for purposes of separate enhancements when subsequent convictions are obtained?

Penal Code section 654 provides as follows: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

■ Section 654 of the Penal Code prohibits multiple punishments, not convictions, when there is a single act or an indivisible course of conduct. (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) In *Miller* the former sentencing practice of "merging" separate convictions was rejected. The court approved the present style which calls for imposing sentence on each count after first determining which count should be the principal one. In this practice, execution of the sentence on the other count or counts is stayed pending the finality of the judgment; the stay becomes permanent when service of sentence is completed. (*Id.*, at p. 888.) This method was first approved in *People* v. *Niles* (1964) 227 Cal.App.2d

749, 755-756 [39 Cal.Rptr. 11], after a discussion of the pitfalls to be faced if the judge dismisses one conviction without protecting against a successful appeal of the other.

In this case, for punishment purposes, Penal Code section 654 required the sentencing judge to select between two offenses carrying the same penal term. It was irrelevant that one offense may have been committed before the other. The court properly exercised discretion in choosing to stay the execution of sentence on the subdivision (b) conviction.

Having suffered two convictions and one punishment, defendant remains exposed to the use of the two convictions to enhance future punishment. The Vehicle Code contains an increasing number of sections which penalize recidivism. These sections ordinarily refer to prior "convictions" without qualifying them to exclude multiple convictions arising from a single driving occasion. By only staying *punishment* on one of the two convictions, another court at another time may have to determine whether the defendant has one or two "priors" arising from this prosecution. He also faces immediate administrative action which may vary in severity depending upon whether he is reported as having one or two convictions. Similarly, in the event of a subsequent conviction, future administrative action will vary if the defendant suffered two convictions from the single act.

Imposing extra punishment because of prior convictions is not a new practice. The ultimate punishment imposed is for the new offense, with consideration of the history of the offender. The defendant is on constructive notice that habitual offenders face aggravated penalties. There is no ex post facto consequence. (*In re Foss* (1974) 10 Cal.3d 910, 922 [122 Cal.Rptr. 649, 519 P.2d 1073]; *People* v. *Williams* (1983) 140 Cal.App.3d 445, 449 [189 Cal.Rptr. 497].)

Therefore, the problem: Should the sentencing court stay the *use* of one of the two *convictions,* pending appeal, and stay the use permanently so long as the other conviction remains valid? The answer is affirmative if we resort to logic.

Here, defendant was convicted of two offenses arising from one prohibited activity, driving after excessive drinking. Although the activity became criminal in two ways, under these facts it took place in only *one way*. We distinguish cases of dual activities of distinct quality, such as the rapist who also commits burglary.

This defendant had two separate prior convictions; he suffered two more because of one indivisible driving event. He now appears to be a four-time offender.

Penal Code section 654 usually concerns punishment for current multiple convictions. However, it has been invoked in other situations. One prior rape conviction was erroneously used four times by the trial court in *People v. Carter* (1983) 144 Cal.App.3d 534 [193 Cal.Rptr. 193], for purposes of multiple enhancements. The double use of a single prior conviction was nullified in *People v. Tassell* (1984) 36 Cal.3d 77, 91-92 [201 Cal.Rptr. 567, 679 P.2d 1], citing *Carter*. When the enhancement relates to the offender in the historical context, it is used only once in arriving at the new sentence. (*Id.*, at p. 90.) Under these facts, we find it equally appropriate to limit future punishment when the offender has suffered two driving convictions arising from one such occurrence. This conclusion is to be confined to its particular circumstances.

There are several procedural variations in which this issue can arise. For example, in this case the sentencing judge imposed sentence, overlooking the immediate administrative effect of two separate convictions and the need to prevent the future use of one of the two convictions. In other cases, courts may have suspended imposition of sentence, granted probation, and left two convictions for present and potential use.

This court has suggested several ways trial courts may avoid multiple punishment. (*People v. Smith* (1977) 70 Cal.App.3d 306 [138 Cal.Rptr. 783]; *People v. Snipe* (1972) 25 Cal.App.3d 742 [102 Cal.Rptr. 6, 60 A.L.R.3d 1316].) In this case the sentencing court could have resolved the issue (without leaving it for another court) simply by adding an order staying the *use* of one conviction for penal and administrative purposes. If probation had been found appropriate, the conviction record could have been clarified and settled by issuing an order that use of one of the two convictions for penal and administrative purposes be stayed pending satisfactory completion of probation, the stay to become permanent upon that event, or later service of sentence if probation is revoked and sentence imposed.

In accordance with the foregoing determinations, the judgment below is hereby modified by the following addition: It is ordered that the *use* of the conviction of count two, violation of Vehicle Code section 23153, subdivision (b), as a prior conviction for penal and administrative purposes, be stayed pending the finality of the judgment, the stay to become permanent when service of sentence is completed. The matter is remanded to the trial court with directions to prepare an amended abstract of the record pursuant to section 1803, reflecting the modified judgment.

The judgment is affirmed as modified and remanded with directions.

Brown (G. A.), P. J., and Franson, J., concurred.