Filed 2/9/16  P. v. Dayzie CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B260418 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA090167) |
| v. | |
| JUDY ANN DAYZIE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven R. Van Sicklen, Judge.  Affirmed as modified.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Judy Ann Dayzie appeals from the judgment entered following her open plea of no contest to felony driving under the influence of alcohol (Veh. Code, § 23152, subd. (a), count 1) and felony driving with a blood alcohol level of 0.08 percent or greater (*id.*, subd. (b), count 2). Dayzie also admitted she had suffered two prior felony convictions for similar offenses within the past 10 years (Veh. Code, §§ 23550, 23550.5) and one prior felony conviction within the meaning of the three strikes law (Pen. Code,[1] §§ 667, subds. (b)-(j), 1170.12), and she had served three separate prison terms for felonies (§ 667.5, subd. (b)). The trial court sentenced Dayzie to nine years in state prison. Dayzie contends the trial court abused its discretion in denying her motion to dismiss her prior strike convictions and sentenced her in violation of section 654. We modify the judgment to stay the sentence on count 2, and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Crimes*

Around midnight on April 28, 2014, Torrance police officers observed Dayzie driving erratically. They initiated a traffic stop, conducted field sobriety tests, and arrested Dayzie for driving under the influence based on her objective symptoms of intoxication. A sample of Dayzie's blood was subsequently drawn and tested twice, revealing blood alcohol concentrations of 0.227 and 0.218 percent.

B. *The Plea*

On August 19, 2014 Dayzie appeared in court with her attorney, who stated he had informed Dayzie that the People had rescinded their offer of four years in state prison and were not going to make a new offer. Counsel for Dayzie told the court that he had

---

[1] Undesignated statutory references are to the Penal Code.

2

advised Dayzie she could enter an open plea for a potential maximum prison sentence of nine years, it was unlikely under the circumstances the court would impose a four-year term, and the People would ask the court to impose the maximum sentence. Counsel for Dayzie stated that he believed Dayzie planned to enter a plea, but she wanted to postpone the sentencing hearing to participate in the MERIT program.[2]

The trial court observed that Dayzie had numerous prior convictions for driving under the influence and other offenses, but the court declined to give a tentative sentence. Instead, the court agreed to postpone the sentencing hearing to enable the parties to submit sentencing memoranda. The court noted that, although Dayzie would "get some credit for pleading open and for not going through a trial," the case was "very serious. I just don't know what we can do to stop Ms. Dayzie from drinking and driving. She will kill somebody some day. . . . And she knows that. Because every time she gets a D.U.I. she gets a *Watson* advisement. And you can tell her what happened here recently."[3] The court then told Dayzie that a young man had received a sentence of 34 years to life after killing two people while driving under the influence of alcohol. Dayzie stated she was aware of the case.

After Dayzie conferred with her attorney, her attorney informed the court that Dayzie wanted to enter an open plea. The court reminded Dayzie, "This is a no-promises plea. The sentence could be anywhere from, let's say, four years to nine years, if that's the maximum." Dayzie replied, "Yes, I understand." The court continued, "It's definitely not going to be a probationary plea—sentence for sure. But I'll consider the four years as a bottom and nine years as the top. If you have any questions, though,

---

[2]    The MERIT program is the Los Angeles County Sheriff Department's Maximizing Education Reaching Individual Transformation program, which is overseen by the Education Based Incarceration Bureau and facilitated by volunteers, professional instructors, and deputies in the Sheriff's Department.

[3]    The *Watson* advisement refers to an advisement, based on *People v. Watson* (1981) 30 Cal.3d 290, 296, about the dangers of drinking and driving, and warns that those who kill someone while driving under the influence could be charged with murder.

please stop us and talk to your attorney. Any questions, we'll do our best to answer them for you."

The prosecutor advised Dayzie of the nature of the charges and special allegations against her. He further advised that by entering an open plea she would be pleading to both charges and admitting all allegations, with "no promise for your plea at this time." The prosecutor told Dayzie that "the maximum sentence you can receive is nine years in the state prison." Dayzie indicated she understood the nature of the charges against her, had spoken with her attorney, and wanted to enter a plea.

The prosecutor next advised Dayzie of her constitutional rights, including her right to a jury trial and her right of confrontation, as well as her privilege against self-incrimination. Dayzie stated she understood and agreed to waive each of these rights. The prosecutor further advised Dayzie that the court would sentence her to state prison and, upon her release, the court would place her either on parole or post-release community supervision. The prosecutor gave Dayzie another *Watson* advisement, telling her that "driving under the influence of alcohol or drugs or a combination of both is extremely dangerous to human life. In the future, if you drive under the influence of alcohol or drugs or a combination of both and as a result of your driving someone is killed, you can be charged with murder." Dayzie stated she understood, acknowledged she was pleading freely and voluntarily, and confirmed no one had made any promises in exchange for her plea or admissions.

Dayzie then pleaded no contest to both counts and admitted the enhancement allegations. Counsel for Dayzie joined in the plea and the waiver, and stipulated to a factual basis for the plea based on the police reports and the preliminary hearing transcript. The trial court found that Dayzie had voluntarily, knowingly, and intelligently entered the plea and admitted the special allegations, and that there was a factual basis for the plea. Based on the plea and admissions, the court found Dayzie guilty of violating Vehicle Code section 23152, subdivisions (a) and (b). The court, after Dayzie gave a time waiver, scheduled a sentencing hearing, and requested sentencing memoranda from the parties.

4

C. *The Sentence*

At the sentencing hearing on November 18, 2014 the trial court confirmed it had read Dayzie's motion to dismiss her prior convictions pursuant to *People v. Superior Court* (1996) 13 Cal.4th 497, 529-530 (*Romero* motion), the parties' sentencing memoranda, the probation officer's report, and letters from Dayzie and her daughter. Counsel for Dayzie asked the court to dismiss the prior strike and to impose the four-year sentence previously offered by the People. The prosecutor asked the court to impose the maximum nine-year sentence. After listening to argument by the attorneys and a personal statement by Dayzie, the court denied the motion to strike the prior strike and sentenced Dayzie to an aggregate state prison term of nine years.

In denying Dayzie's motion to strike the prior strike, the trial court acknowledged her 1987 prior strike conviction for assault with a deadly weapon was 25 years old, but discounted its remoteness in light of Dayzie's continuous criminal activity and numerous convictions during the intervening years. In particular, the court noted Dayzie's record showed multiple convictions for driving on a suspended license and nine convictions for driving under the influence. The court also found that Dayzie was "extremely likely" to reoffend because she was relatively young and she had a 0.23 blood alcohol level in the current offense.[4]

The trial court also commented on the letter from Dayzie's daughter, in which she apparently wrote that the legal system had never offered Dayzie treatment for her addiction and that Dayzie's struggle with alcoholism was related to her Native American heritage. The court indicated it was "sort of offended" by the daughter's letter and characterized her claims as "nonsense." The court stated that judges and prosecutors are always seeking programs for defendants who need them and that addiction does not discriminate, but "hits everybody" regardless of ethnicity. The court then stated, "My father and mother both died from addiction. My father was a judge and died at age 62 from alcohol. My mother followed five years later. I've been sober 18 years. I'm an

---

[4] Dayzie was born December 2, 1964, making her 49 years old at the time of sentencing.

5

alcoholic. . . . There's no minority associated with me." The court remarked that "sobriety is a product of two things. It's saying 'no' and staying away from people that enable you to drink or encourage you to drink and pretend to be your friends when in reality they're as much a public enemy as the alcoholic is."

The court observed that the officers reported that Dayzie was disoriented and lost when they stopped her, and she admitted she was going the wrong way. The court then told Dayzie about a 23-year-old man who was driving under the influence and was similarly disoriented and lost. He struck and killed two employees of the California Department of Transportation on the freeway and was sentenced to a state prison term of 36 years to life. The court told Dayzie she had been cheating death, and the deaths of others, for a long time. The court told Dayzie it was time she and her daughter accepted responsibility for Dayzie's pattern of drinking and driving. The court said that Dayzie's daughter should do more to help her mother rather than trying to blame Dayzie's alcoholism on others.

In selecting the upper term and imposing a nine-year sentence, the trial court considered the factors in California Rules of Court, rule 4.421(b), including rule 4.421(b)(2), "[t]he defendant's prior convictions as an adult . . . are numerous or of increasing seriousness," and rule 4.421(b)(3), "[t]he defendant has served a prior prison term." The court explained that Dayzie had previously been incarcerated in state prison for a total of seven years as a result of her convictions for felony driving under the influence and child endangerment, yet she was "still not willing to get sober." The court determined that Dayzie was "a very serious danger to society" and "somebody that I don't want on the road."

Dayzie filed a timely notice of appeal, in which she checked the preprinted box indicating her appeal was "based on the sentence or other matters occurring after the plea that do not affect the validity of the plea." Dayzie did not obtain a certificate of probable cause.

6

**DISCUSSION**

A. *The Trial Court Did Not Abuse Its Discretion in Denying the Motion To Dismiss*

Dayzie argues that the "trial court abused its discretion when it denied [her] motion to dismiss one strike and two Penal Code, § 667.5, subdivision (b) priors based in part on personal bias against alcoholics."[5] The People argue that Dayzie cannot raise this argument on appeal because she failed to obtain a certificate of probable cause, she forfeited the argument by not objecting to the court's remarks at the sentencing hearing, and the argument lacks merit because the court's denial of Dayzie's *Romero* motion was not based on judicial bias. We agree with the People's second and third arguments.

1. *Dayzie Did Not Need To Obtain a Certificate of Probable Cause*

Under section 1237.5, a defendant generally may not appeal from a judgment of conviction following a guilty or no contest plea unless the defendant files with the trial court a statement "showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" (§ 1237.5, subd. (a)), and the trial court executes and files "a certificate of probable cause for such appeal with the clerk of the court" (§ 1237.5, subd. (b)). The requirements of section 1237.5 are strictly applied. (*In re Chavez* (2003) 30 Cal.4th 643, 651; *People v. Mendez* (1999) 19 Cal.4th 1084, 1098; *People v. Hodges* (2009) 174 Cal.App.4th 1096, 1105.) There are, however, several exceptions to the certificate of probable cause requirement of section 1237.5, one of which is if the appeal is based on "[g]rounds that arose after entry of the plea and do not affect the plea's validity." (Cal. Rules of Court, rule 8.304(b)(4)(B); see *People v. Johnson* (2009) 47 Cal.4th 668, 677 ["a defendant is 'not required to comply with the provisions of section 1237.5 where . . . he is not attempting to challenge the validity of his plea of guilty but is asserting only that errors occurred in the subsequent adversary hearings conducted by the trial court for the purpose of determining the degree of the

---

[5] The record does not reflect that Dayzie ever moved to strike the prior prison term allegations pursuant to section 667.5, subdivision. (b).

7

crime and the penalty to be imposed'"].)  "'[T]he critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5.'"  (*People v. French* (2008) 43 Cal.4th 36, 44; see *People v. Buttram* (2003) 30 Cal.4th 773, 781-782 (*Buttram*); *People v. Panizzon* (1996) 13 Cal.4th 68, 76 (*Panizzon*).)

In *Panizzon*, the defendant entered into a plea agreement pursuant to which the court would impose a specified sentence and the prosecution would dismiss several charges.  (*Panizzon, supra*, 13 Cal.4th at p. 73.)  After the court sentenced the defendant to the negotiated term, the defendant appealed without first obtaining a certificate of probable cause, arguing that the sentence violated the federal and state constitutional prohibitions against cruel and unusual punishment.  (*Id.* at p. 74.)  The Supreme Court held that, because the defendant was "in fact challenging the very sentence to which he agreed as part of the plea," the challenge "attacks an integral part of the plea [and] is, in substance, a challenge to the validity of the plea, which requires compliance with the probable cause certificate requirements of section 1237.5 . . . ."  (*Id.* at p. 73.)  The Supreme Court dismissed the appeal because the defendant had not obtained a certificate of probable cause.  (*Id.* at pp. 89-90.)

On the other hand, in *Buttram* the defendant pleaded guilty to felony drug charges in exchange for an agreed-upon maximum sentence.  (*Buttram, supra*, 30 Cal.4th at p. 776.)  Thereafter, the defendant appealed the trial court's denial of diversion and imposition of the maximum term.  (*Ibid.*)  The Supreme Court held the defendant did not have to obtain a certificate of probable cause because, "absent contrary provisions in the plea agreement itself, a certificate of probable cause is not required to challenge the exercise of individualized sentencing discretion within an agreed maximum sentence. Such an agreement, by its nature, contemplates that the court will choose from among a range of permissible sentences within the maximum, and that abuses of this discretionary sentencing authority will be reviewable on appeal, as they would otherwise be."  (*Id.* at pp. 790-791.)

8

Dayzie does not need a certificate of probable cause to appeal the trial court's denial of her motion to strike her prior strike conviction. Dayzie entered an open plea, not a negotiated plea. "An open plea is one under which the defendant is not offered any promises. [Citation.] In other words, the defendant 'plead[s] unconditionally, admitting all charges and exposing himself [or herself] to the maximum possible sentence if the court later [chooses] to impose it.'" (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4.) The prosecution did not promise Dayzie any reduction in her sentence or other benefit in exchange for her plea. Nor were there any promises about how the court might rule on a motion to strike Dayzie's prior strike conviction. Moreover, as in *Buttram*, Dayzie's plea necessarily contemplated further adversary proceedings in which the court would exercise its discretion to determine the appropriate sentence. (See *Buttram*, *supra*, 30 Cal.4th at p. 785). Dayzie's plea exposed her to a sentencing range of four years to nine years, and preserved her right to ask the trial court to exercise discretion in favor of a shorter term within that range. (See *ibid.* [certificate of probable cause is not required where the defendant "seeks only to raise issues reserved by the plea agreement, and as to which he did not expressly waive the right to appeal"]; cf. *People v. Cuevas, supra,* 44 Cal.4th at p. 384 ["by challenging the negotiated maximum sentence imposed as part of the plea bargain, defendant is challenging the validity of his plea itself"].) Dayzie's *Romero* motion sought only to challenge the trial court's exercise of discretion in imposing sentence. It was not an attack on the plea but was related to the determination of the penalty the court would impose.

2. *Dayzie Has Forfeited Her Argument Based on Judicial Bias*

Although Dayzie argues on appeal that the trial court was biased against her, she neither objected on that basis nor moved to disqualify the court for bias at any time during the plea and sentencing hearings. Therefore, she has forfeited her assertion that the trial court was biased against her. (See *People v. Pearson* (2013) 56 Cal.4th 393, 447 [claim of judicial bias forfeited where defendant did not object]; *People v. Elliott* (2012) 53 Cal.4th 535, 572 ["[b]y failing to raise at trial a claim of judicial bias,

9

defendant has forfeited it"]; *People v. Guerra* (2006) 37 Cal.4th 1067, 1111 [party must raise judicial bias ""'"at the earliest practicable opportunity"'"" and "'[i]t is too late to raise the issue for the first time on appeal'"], overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

3. *The Trial Court's Denial of Dayzie's Motion To Strike the Prior Strike Was Not Based on or the Product of Judicial Bias*

Even if Dayzie had not forfeited her judicial bias argument, the trial court's denial of Dayzie's motion to dismiss was not based on bias. In exercising its discretion in ruling on a motion to dismiss a prior strike conviction, "the trial court 'must consider whether, in light of *the nature and circumstances* of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, *the defendant may be deemed outside the scheme's spirit*, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' (Italics added.)" (*People v. Vargas* (2014) 59 Cal.4th 635, 641.)

Dayzie argues that the trial court, in considering these *Romero* factors, made several "disparaging remarks" and "negative comments about alcoholics and alcoholism," which "gave the appearance the judge was biased and denied the motion based on personal antipathy toward [Dayzie], an admitted alcoholic." Dayzie points to the judge's statements identifying himself and his parents as alcoholics, advising Dayzie to refuse all alcohol and to avoid people who encourage her to drink alcohol, stating Dayzie and her daughter had responsibility for Dayzie's criminal conduct, and describing an unrelated case in which a young man received an indeterminate life term for killing two people while driving under the influence.

Although trial courts generally should avoid making statements in sentencing hearings about their personal background and experiences, in this case the court's remarks were primarily comments about the record of a woman who had been convicted of 10 offenses of driving under the influence, most recently with a blood alcohol level

10

nearly three times the legal limit, as well as "four or five probation violations while [she was] on DUI probation" and several convictions for driving on a suspended license, and who had a "history of violence." The court's remarks were also in response to statements by Dayzie and her daughter (who counsel for Dayzie informed the court also had driving under the influence cases), in support of Dayzie's motion to strike and her request for leniency, that no one in the criminal justice system had ever offered Dayzie any rehabilitation services, and that the court should take into account Dayzie's Native-American heritage. These and other remarks by the court showed it was understandably frustrated with Dayzie's failure to accept responsibility for her chronic drinking and driving, believed it unlikely she would refrain from this behavior in the future, and hoped to impress upon Dayzie the extreme danger her conduct posed to society. (See *People v. Guerra*, *supra*, 37 Cal.4th 1067 at p. 1111 ["[m]ere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom do not demonstrate a bias"]; accord, *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786.) The court's remarks do not show impermissible bias in denying Dayzie's motion to strike her prior strike conviction.

B. *The Trial Court Should Have Stayed the Sentence on Count 2*

The nine-year state prison sentence imposed by the trial court consisted of six years (the upper term of three years doubled under the three strikes law) for felony driving under the influence (count 1), a concurrent term of six years for felony driving with a blood-alcohol level of 0.08 percent or greater (count 2), plus three one-year terms for the prior prison term enhancements. Section 654 "prohibits multiple punishment for a single act or omission" (*People v. Cook* (2015) 60 Cal.4th 922, 929) or "for more than one crime arising from a single indivisible course of conduct." (*People v. Williams* (2013) 57 Cal.4th 776, 781; see *People v. Sok* (2010) 181 Cal.App.4th 88, 99 ["[s]ection 654 prohibits punishment for two offenses arising from the same act or from a

11

series of acts constituting an indivisible course of conduct"].)[6] Dayzie argues, the People acknowledge, and we agree that the court can only punish Dayzie once for the single act of driving under the influence of alcohol and with a blood-alcohol level of 0.08 percent or greater. (See *People v. Martinez* (2007) 156 Cal.App.4th 851, 857; *People v. Duarte* (1984) 161 Cal.App.3d 438, 447.) Therefore, the judgment is modified to stay execution of the concurrent sentence on count 2. (See *People v. Duff* (2010) 50 Cal.4th 787, 796; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1469.)

## DISPOSITION

The judgment is modified to stay execution of sentence on count 2 for driving with a blood alcohol level of 0.08 percent or greater in violation of Vehicle Code section 23152, subdivision (b). In all other respects the judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.


SEGAL, J.


We concur:



ZELON, Acting P. J.                                    BLUMENFELD, J.[*]

---

[6]     Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12