Filed 4/13/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C083983 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F04095) |
| v. | |
| JESSE CODY TOM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Raoul M. Thorbourne, Judge. Reversed in part and affirmed in part.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

1

While watching a small dog that belonged to his girlfriend's parents, defendant Jesse Cody Tom beat, stabbed, and strangled the dog. Defendant then covered the dead dog with oil and placed it inside a barbeque. Before he could light the deceased dog on fire, however, officers arrived on scene and apprehended defendant after he fled.

A jury convicted defendant of two counts of animal cruelty (Pen. Code, § 597, subds. (a)—count one, & (b)—count two),[1] resisting, delaying, or obstructing an officer (§ 148, subd. (a)(1)—count three), and attempted arson (§ 455—count four). The jury found true the special allegation that defendant had personally used a deadly weapon, a broken wine bottle, within the meaning of section 12022, subdivision (b)(1). At a subsequent proceeding, the court found true a prior prison allegation (§ 667.5, subd. (b)), and later sentenced defendant to an aggregate term of five years eight months in state prison.

Defendant does not dispute the facts underlying his convictions, but on appeal he contends that he could not be convicted of violating subdivision (a) and subdivision (b) of section 597, the animal cruelty statute, based on the same act. He further contends the court should have stayed the sentence on his attempted arson offense because his actions were a part of one indivisible course of conduct.

Based on the plain language of section 597, we conclude defendant could not be convicted of violating both subdivision (a) and subdivision (b) based on the same conduct. Because the record shows the same conduct served as the basis for both counts, we shall reverse his section 597, subdivision (b) conviction. We further conclude the trial court properly sentenced defendant for the attempted arson offense alleged in count four.

---

[1] Undesignated statutory references are to the Penal Code.

# I. BACKGROUND

Defendant does not dispute the evidence, which when viewed in the light most favorable to the judgment, may be summarized as follows:

Robbyn and John owned a small dog named Bailey. When John had to have surgery, they sent the dog to stay with their daughter, Vanessa. At the time, Vanessa was dating defendant; they lived together in Elk Grove.

On July 8, 2015, the neighbor living in the house behind defendant's home heard a dog crying in distress and banging sounds against the fence. The neighbor estimated that he heard the dog crying or screaming for about five to seven minutes. His mother called police. A short time later, the neighbor saw an individual run across his backyard and hop the fence into another neighbor's backyard.

Elk Grove police officers responded to the call that a dog was being beaten in defendant's backyard. Defendant answered the front door when officers knocked. He appeared to have blood on his hand and leg. When asked if there was a dog at the house, defendant claimed there was not. After being asked about the blood on his leg, defendant slammed the door shut and locked it.

Several officers entered the backyard through a side gate to check on the welfare of the dog. They saw multiple dog dishes, water bowls, and dog beds. The back door to the house was open, and officers could hear the sound of glass breaking and a smoke alarm inside the house. Smoke began billowing out the back door. When officers identified themselves as Elk Grove police officers, the back door slammed shut.

A few minutes later, defendant fled from the house, jumping over multiple fences. He was apprehended in a nearby yard and arrested following a struggle with officers. Officers then searched the house, but did not locate any people or animals in the home.

Inside, a kitchen stove burner was set to medium and there was white powder, bread, and an oily substance on the burner that were on fire. One of the stove knobs had blood on it. A broken wine bottle and an empty bottle of oil with blood smears were also

3

found in the kitchen. Burnt paper towels were in the kitchen sink, which was overflowing with water. Blood was observed on the handle of the back door, the back patio, the rear fence, and a dog bed.

An officer searching the backyard located a deceased small dog, later identified as Bailey, inside a Weber charcoal grill. The dog was lying below the metal grate of the grill.

Defendant was charged in a November 2016 amended information with two counts of animal cruelty (§ 597, subd. (a)—count one (intentional killing of dog); § 597, subd. (b)—count two (needless suffering of dog)), one count of resisting, delaying, or obstructing an officer (§ 148, subd. (a)(1)—count three), and two counts of attempted arson (§ 455—count four (dog) & count five (house).) As to count one, the information alleged defendant personally used a deadly weapon. (§ 12022, subd. (b)(1).) The amended information also alleged that defendant had served a prior prison term. (§ 667.5, subd. (b).)

At trial, veterinarian William Spangler, the prosecution's necropsy and pathology expert, testified about the autopsy he performed on Bailey. Bailey weighed 12 pounds and her fur was matted down and covered with olive oil and charcoal dust. Bailey suffered nine lacerations, including one that caused a notch in the top of her skull. Bailey's wounds were consistent with being stabbed by a broken bottle or broken glass. Bailey also suffered hemorrhaging around her neck, consistent with strangulation. Bailey's oral cavity was coated with blood, which was likely the result of a struggle. The dog had several chipped teeth and a rear molar was found in her stomach. Plant tissue was found in Bailey's lungs, indicating that she had vomited and then inhaled. In Dr. Spangler's opinion, five factors contributed to Bailey's death: strangulation, stab wounds, pulmonary emphysema caused by inhaling material that did not belong in the lungs, choking on foreign material inhaled during the struggle, and a preexisting enlarged heart.

4

Based on Dr. Spangler's testimony, the prosecutor argued during closing argument that the evidence showed multiple causes of death, including strangulation, multiple lacerations to the dog's face and neck, pulmonary emphysema, inhalation of foreign material into the dog's lungs causing her to choke, and a preexisting enlarged heart. The prosecutor further argued that the same acts—strangulation, stabbing, and choking subjected Bailey to needless suffering and unjustifiable pain.

The jury found defendant guilty of counts one through four and found true the deadly weapon enhancement. Defendant was found not guilty of count five. After waiving his right to a jury trial on the prison prior allegation, the court found the allegation true.

The court sentenced defendant to an aggregate term of five years eight months in state prison calculated as follows: the upper term of three years for count one plus a consecutive one-year term for personally using a deadly weapon during the offense; the middle term of two years for count two, stayed pursuant to section 654; a consecutive eight-month term for count four; and a consecutive one-year term for the prior prison enhancement. Defendant timely appealed.

## II. DISCUSSION

*A.      Section 597*

Defendant challenges his section 597, subdivision (b) conviction in count two for subjecting Bailey to needless suffering because the same conduct underlying the conviction served as the basis for his section 597, subdivision (a) conviction in count one. He contends that under the plain language of subdivision (b), specifically the introductory phrase, "Except as otherwise provided in subdivision (a)," he could not be convicted of violating both subdivision (a) and subdivision (b) of section 597 based on the same conduct. Given the statutory language and circumstances of this case, we agree.

"Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose." (*Tuolomne Jobs & Small Business Alliance v.*

5

*Superior Court* (2014) 59 Cal.4th 1029, 1037.) We begin with the language of the statute as the most reliable indicator of intent. We construe terms in context, harmonizing the statutes both internally and with each other to the extent possible. (*Ibid.*) Interpretations that render absurd results or cause words to be mere surplusage are to be avoided. (*Ibid.*) When the language is clear, we need not resort to other indicia of legislative intent. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) We do not presume the Legislature meant to overthrow long-established principles of law, unless such an intention is clearly expressed or necessarily implied. (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1325.)

Subdivision (a) of section 597 proscribes maliciously and intentionally maiming, mutilating, torturing, or wounding a live animal, or maliciously and intentionally killing an animal. The subdivision specifically provides: "Except as provided in subdivision (c) of this section or Section 599c, every person who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal, or maliciously and intentionally kills an animal, is guilty of a crime punishable pursuant to subdivision (d)." (§ 597, subd. (a).)

Subdivision (b) of section 597 forbids overdriving, overloading, driving when overloaded, overworking, torturing, tormenting, depriving of food, drink, or shelter, cruelly beating, mutilating, or cruelly killing any animal, or causing or procuring the same, and subjecting any animal to needless suffering, or inflicting unnecessary cruelty upon the animal, or in any manner abusing any animal. It provides: "*Except as otherwise provided in subdivision (a) or (c)*, every person who overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, drink, or shelter, cruelly beats, mutilates, or cruelly kills any animal, or causes or procures any animal to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, drink, shelter, or to be cruelly beaten, mutilated, or cruelly killed; and whoever, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or

6

inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather, or who drives rides, or otherwise uses the animal when unfit for labor, is, for each offense, guilty of a crime punishable pursuant to subdivision (d)." (§ 597, subd. (b), italics added.)

Both parties agree that subdivision (a) of section 597 applies to intentional acts while subdivision (b) of section 597 applies to conduct resulting from criminal negligence. (See *People v. Alvarado* (2005) 125 Cal.App.4th 1179, 1186-1187; *People v. Speegle* (1997) 53 Cal.App.4th 1405, 1415.) Defendant argues, however, that "intentional unlawful conduct is also negligent conduct." In his view, intentional conduct that violates subdivision (a) necessarily violates subdivision (b). Because the first clause of subdivision (b) states, "*Except as otherwise provided in subdivision (a) or (c),*" (italics added) defendant contends he cannot be convicted of violating subdivision (b) when the jury found him guilty of violating subdivision (a) based on the same act.

No prior California case has construed the meaning of the phrase "except as otherwise provided in subdivision (a) or (c)" found in section 597, subdivision (b). Defendant therefore relies on *Delgado v. Superior Court* (1977) 74 Cal.App.3d 560 (*Delgado*), a case construing a similar phrase in the context of California's venue statutes, to support his argument.

*Delgado* considered the meaning of the phrase "except as otherwise provided by law" within the context of California Code of Civil Procedure section 395, which provides: "Except as otherwise provided by law and subject to the power of the court to transfer actions or proceedings as provided in this title, the superior court in the county where the defendants or some of them reside at the commencement of the action is the proper court for the trial of the action." A plaintiff in *Delgado* was injured in a car accident with a Yolo County Sheriff's car in Yolo County. (*Delgado, supra,* 74 Cal.App.3d at p. 562.) The plaintiffs sued in Sacramento County, naming, among

7

others, the Sacramento dealer that sold the injured plaintiff his car as well as Yolo County as defendants. (*Ibid.*) The trial court granted Yolo County's motion to transfer venue to Yolo County pursuant to Code of Civil Procedure section 394, which provides that an action against a county for an injury occurring there shall be tried in that county. (*Delgado, supra,* at pp. 562-563.)

This court affirmed the trial court's ruling after finding that Code of Civil Procedure section 394, rather than section 395, governed venue. (*Delgado, supra,* 74 Cal.App.3d at p. 564.) According to the court, "[t]he phrase, 'Except as otherwise provided by law' means that section 395 is to be applied only when there is no other applicable venue provision." (*Ibid.*) Because section 394 applied, the court found the trial court correctly concluded it had a mandatory duty under that section to transfer the action to Yolo County. (*Delgado, supra,* at p. 564.)

Other cases have interpreted the phrase "except as otherwise provided by law" similarly. (See, e.g., *Central Contra Costa Sanitary Dist. v. Superior Court* (1978) 84 Cal.App.3d 702, 705 [following *Delgado*].) In *People v. Burnick* (1975) 14 Cal.3d 306, at page 314, for example, the court construed the exception in Evidence Code section 115, which declares in relevant part that, "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence," to mean " 'unless a heavier or lesser burden of proof is specifically required in a particular case by constitutional, statutory, *or decisional law*.' " In other words, if another statute that had a heavier burden of proof applied, then the preponderance of the evidence standard in Evidence Code section 115 did not.

*Delgado* and *Burnick*, we believe, provide useful guidance in construing the phrase "[e]xcept as otherwise provided in subdivision (a) or (c)" in section 597, subdivision (b). The language is an exception to when subdivision (b) applies, and governs a partial overlap of conduct: A person may be convicted of violating section 597, subdivision (b) based on specific conduct unless that same conduct is found to

8

violate subdivision (a). In that case, in order to avoid making the first clause of section 597, subdivision (b) superfluous (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1313), subdivision (b) gives way to subdivision (a).

By contrast, in *People v. Duarte* (1984) 161 Cal.App.3d 438, at pages 444-446 (*Duarte*), the court held the defendant was properly convicted of violating both Vehicle Code section 23153, subdivision (a) (driving under the influence and causing bodily injury) and subdivision (b) (driving with a blood-alcohol level of 0.10 percent or more and causing bodily injury) based on a single act of driving after excessive drinking. Neither of those subdivisions contained an exception like section 597, subdivision (b), however.

Vehicle Code section 23153, subdivision (a) provided in relevant part, " 'It is unlawful for any person, while under the influence of an alcoholic beverage . . . to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes death or bodily injury to any person other than the driver.' " (*Duarte, supra,* 161 Cal.App.3d at p. 445.) Subdivision (b), in turn, provided, " 'It is unlawful for any person, while having 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes death or bodily injury to any person other than the driver.' " (*Duarte, supra,* at pp. 445-446.) Because Vehicle code section 23153, subdivision (b) did not provide a mere alternative definition of driving under the influence and it did not constitute a lesser included offense of that proscribed in subdivision (a), the court concluded the defendant had been properly charged and convicted of both offenses based on a single act. (*Duarte, supra,* at p. 446.)

The contrast between the statutory language in section 597, subdivision (b), which includes the language, "Except as otherwise provided in subdivision (a)," and Vehicle Code section 23153, subdivision (b), where such an exception is absent, further

9

reinforces our interpretation that a defendant cannot be convicted of violating section 597 subdivisions (a) and (b) based on the same conduct. The textual and structural differences between the statutes demonstrate that while a defendant may properly be convicted of violating both subdivisions of Vehicle Code section 23153 based on a single act, the same is not true for subdivisions (a) and (b) of section 597.

Interpreting the statute in this manner, moreover, does not mean that a person cannot be convicted of violating both subdivisions based on separate conduct. In *People v. Baniqued* (2000) 85 Cal.App.4th 13, at page 16, for example, the defendant was convicted of three felony violations of section 597 for crimes related to cockfighting, including one subdivision (a) conviction for maliciously and intentionally maiming, torturing, or wounding roosters, and two subdivision (b) convictions for subjecting the animals to needless suffering and for cruelly killing live animals. Although not entirely clear from the opinion, it appears sufficient separate acts supported the convictions. When officers arrived to break up a reported cockfight, they found nearly 100 dead or dying roosters, some with weapons attached to their legs, some with detached feet or contained in cages, and some that had even been burned in a barrel. (*People v. Baniqued, supra,* at pp. 17-18.)

The People do not address in any meaningful way defendant's statutory construction argument, but instead contend that the jury could have found defendant's conduct in this case violated both subdivisions. They argue that the evidence showed the neighbor heard defendant torturing Bailey for five to seven minutes by hitting her with a bottle, cutting her skull, and then slamming her into a fence several times. The People characterize this conduct as torture sufficient to support defendant's section 597, subdivision (b) conviction. The People then argue that defendant killed Bailey by strangling her to death, which was an intentional act of animal cruelty sufficient to support his section 597, subdivision (a) conviction.

10

The problem with the People's argument, however, is that the record shows the prosecutor relied on the *same conduct* for both convictions. For count one—the intentional killing charge under section 597, subdivision (a)—the prosecutor emphasized during closing argument that Dr. Spangler's testimony demonstrated five causes of death: (1) strangulation; (2) multiple lacerations on the dog's face and neck; (3) pulmonary emphysema caused by inhaling material that does not belong in the lungs; (4) inhalation of foreign material into the dog's lungs causing her to choke; and (5) a preexisting enlarged heart. The prosecutor argued as follows: "And what Dr. Spangler said, the combination of stresses, because this is trauma to an animal, and would be to a human. The combination of stresses associated with a violent struggle because she is fighting for her life resulted in multiple stab wounds to the head and neck, fragmented and broken teeth, bruising of subcutaneous tissues of neck suggesting strangulation, acute blood loss and preexisting cardiac hypertrophy all contributed to the death. [¶] Is this beating, is this stabbing, is this attack on this animal a substantial factor [in her death]? Of course it is. Of course it is."

For count two—the unjustifiable pain and suffering charge under section 597, subdivision (b)—the prosecutor argued: "This was a horrible death. This was painful. And those cuts are painful. The choking on the aspiration is painful. Stabbing is painful, down to the muscle tissue. The dog is screaming. The dog is screaming when he's strangling it. And then when he escalates, starts beating with a bottle, it gets louder and louder. And the fence is moving."

Based on the prosecutor's argument, it is clear that the same conduct was cited as supporting convictions under both subdivisions. Because there was no unanimity instruction given, there is no way to determine from the record whether the jury in fact found that defendant intentionally choked the dog to death and negligently beat it with a broken bottle as the People now argue. Rather, after carefully reviewing the record, we believe it is more likely that the jury convicted defendant of violating section 597,

11

subdivision (a) and subdivision (b) based on the same conduct. Given our conclusion that the plain language of section 597, subdivision (b) precludes convictions for violating subdivisions (a) and (b) based on the same conduct, defendant's count two conviction for animal cruelty under section 597, subdivision (b) must be reversed.

B.      *Section 654*

Defendant contends he killed and attempted to burn Bailey's body during a single course of conduct, for which he may only be punished once under section 654. He argues that under section 654 the court erred in sentencing him for both offenses, and that the error violated his constitutional right to due process. We disagree.

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The statute does not prohibit multiple convictions for the same conduct, only multiple punishments. (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.) "In such a case, the proper procedure is to stay execution of sentence on one of the offenses." (*Ibid.*)

In any section 654 inquiry, the court must initially ascertain the defendant's objective and intent. (*People v. Porter* (1987) 194 Cal.App.3d 34, 38.) " 'If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*) "Whether the defendant maintained multiple criminal objectives is determined from all the circumstances and is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it." (*Ibid.*)

The record in this case supports the trial court's finding that the killing of Bailey and the subsequent attempt to burn her body involved multiple objectives even though

they may have shared common acts or were otherwise parts of an indivisible course of conduct. The court reasonably could have concluded that in strangling Bailey, defendant intended to kill the dog, and that in putting oil on Bailey's body and attempting to light it on fire, defendant intended to burn the evidence that he had killed the dog thereby avoiding detection of his crime.

Here, defendant could have killed Bailey without trying to destroy her deceased body. In other words, the act of attempting to burn Bailey's body was not a means used to kill her. Instead, that act followed her death. (See, e.g., *In re Chapman* (1954) 43 Cal.2d 385, 389-390 [when assault is not a means of perpetrating a robbery but is an act that follows after the robbery is completed the defendant is guilty of two punishable acts].) Defendant could therefore be punished for both offenses.

That the crimes occurred in close temporal proximity does not mean that defendant did not harbor more than one criminal objective when committing the offenses. "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Because defendant committed multiple and divisible acts with distinct objectives, the trial court did not violate section 654 by sentencing him for both the count one animal cruelty conviction and the count four attempted arson offense. (See, e.g., *People v. Mejia* (2017) 9 Cal.App.5th 1036, 1047 [the defendant was properly sentenced for both torture and criminal threats because a reasonable trier of fact could conclude the criminal threats were in furtherance of a separate criminal objective, even if, in part, the threats were intended to break or beat the victim down emotionally and to discourage her from attempting to flee]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1022 [the defendant was properly sentenced under § 654 on both arson and criminal threats convictions]; *People v. Phan* (1993) 14 Cal.App.4th 1453, 1466 [robbery of mother and threat to cut off her young son's hand if she did not give more money were separate and divisible acts that

could be punished separately under § 654].) Defendant's due process rights, moreover, were not violated as his sentence was properly calculated.

## III.  DISPOSITION

Defendant's conviction for violating section 597, subdivision (b) (count two) is reversed.  The trial court is directed to prepare an amended abstract of judgment striking the section 597, subdivision (b) conviction and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

/S/

---

RENNER, J.

We concur:

/S/

---

HULL, Acting P. J.

/S/

---

ROBIE, J.

14